## ANDERSON BROS. v. PARKER CONST. CO. (No. 554.)

(Court of Civil Appeals of Texas. Beaumont. June 1, 1920.)

**1. Arbitration and award ⊚⟾64—Award will be avoided for bias or intimidation.**

While arbitrations are favored in law, and every reasonable intendment will be indulged in to support them, a showing of fraud, bias, or intimidation will avoid an award.

**2. Arbitration and award ⊚⟾85(4)—Fairness and intimidation held issues for jury.**

In a building contractor's action for a balance alleged to be due on an award of arbitration, which defendants sought to avoid on the ground of unfairness of one of the arbitrators and intimidation towards the board on the part of the plaintiff, evidence *held* sufficient to require the court to submit the issues of fairness and intimidation to the jury.

Appeal from District Court, Liberty County; D. F. Singleton, Judge.

Action by the Parker Construction Company against Anderson Bros. Judgment for plaintiff on an instructed verdict, and defendants appeal. Reversed and remanded.

E. B. Pickett, Jr., and C. H. Cain, both of Liberty, for appellants.

Campbell, Myer, Myer & Freeman and Stevens & Stevens, all of Houston, for appellee.

WALKER, J. This suit was instituted by appellee against the appellants to recover the balance due on a house-building contract. Appellee specially pleaded that the difference between it and appellants, by agreement of all parties, had been duly arbitrated, and under the award of the arbitrators a balance was due them of $2,600.35. Appellants answered by general denial, and by special plea to the effect that the building was not according to contract, and claimed damages in the sum of about $5,000. They also admitted in their plea that an effort had been made to arbitrate the difference between them and appellees; that two of the arbitrators had rendered an award, but they sought to avoid the award on the ground that it was tainted with fraud, unfairness, partiality, intimidation, and other improper influences. On the conclusion of the testimony, the trial court instructed a verdict for the appellees. The only proposition submitted by appellants challenges the correctness of this ruling.

Appellants and appellee sought to adjust their differences, growing out of the construction of a brick storehouse in the town of Cleveland, by arbitration. Appellants selected one arbitrator, a Mr. Isaacks, the appellees selected another arbitrator, a Mr. Morin, and these two selected a third, T. C. Edminster. The arbitrators held their first meeting in Cleveland. At this time appellant Anderson and his attorney appeared before them. Morin requested the attorney to withdraw from the room, stating that they did not want any attorney in the case. Edminster and Isaacks examined the roof of the building, about which complaint was made; but Morin refused to do so, stating he would take the word of the other arbitrators as to the condition of the roof. This meeting did not last long. They adjourned and called a second meeting at Houston. According to the testimony of appellants, their attorney went to Houston on the day of this meeting, and had an express agreement with counsel for appellee that no attorney would appear before the arbitrators. After this agreement, counsel for appellants returned to his home in Liberty. When the arbitrators came together for this meeting, appellant Anderson, a Mr. Halcomb, agent for the appellee, and the attorney for the appellee, appeared before the board. Again, according to appellants' testimony, there was an agreement between appellants and appellee that they should leave the board and not return until a decision had been reached. Appellant Anderson did leave, and did not return. Mr. Isaacks, one of the arbitrators, testified that, a short time after Anderson left the room, Halcomb and his attorney returned to the room and remained until the board adjourned. The board met in a balcony in a storeroom. Isaacks stated that Halcomb and his attorney were from 20 to 100 feet from them during their deliberations; that after deliberating until 11 or 12 o'clock—that is, near midnight—the board decided it was not possible to come to an agreement, and adjourned. Down in the front part of the store, Halcomb came to them and asked them if they had reached an agreement. When he found that no agreement had been reached, he requested them to make another effort, stating that the matter had been unadjusted a long time; that, if he was not going to get more than $1,000 out of the deal, he wanted to know it; that he wanted the matter closed up, and whatever the board did would be entirely satisfactory to him; that after this assurance and on this request from Halcomb, the board went back to the balcony, and after a reasonable deliberation reached an adjustment on every item in the dispute between the parties; that in the adjustment they allowed about $960 for the roof on the building; that appellants had a claim based on a clause in the contract allowing them $10 a day for delay in construction; that he agreed with the other arbitrators to waive this $10 a day item on condition that they would agree with him on the amount to be allowed for the roof; that

Edminster, in compromising the two items—that is, the roof item and the damages for delay—agreed to his proposition; that Morin said nothing either way; that after the adjustment was reached they began dictating it to a stenographer, and, when the roof item was reached, Halcomb and his attorney violently protested against the allowance, saying that it was unjust, inequitable, unfair, and illegal; that Halcomb and his attorney came up to the balcony where the arbitrators were, and entered into quite a lengthy discussion of the matter, objecting most vigorously to what had been done; that he (Isaacks) protested against their interfering with the deliberations of the board, stating that they ought to get down and out; that Mr. Anderson was not there, and had no attorney there, and that their presence was unfair; that the other two arbitrators refused to sustain him in his protests as to the presence of Halcomb and his attorney, but permitted them to take part in their deliberations, and that over his protest the meeting again adjourned; that he stated to them that he didn't know that he would have anything further to do with the board; that the matter had been fairly and honestly adjusted, and that there was no excuse for adjourning the board at that time.

Edminster testified:

"The truth of the matter is that, if Mr. Myer [the attorney] and Mr. Halcomb had not interrupted our proceedings and objected to our decision, that decision that we had already made would have been signed by all three of the arbitrators, and would have been our final decision."

The testimony further shows that most of the decision had been reduced to writing when Halcomb and his attorney went to the balcony.

Appellee's version of the facts is quite different from the statement made by Isaacks, and possibly under their statement no error is shown; but it was the duty of the jury, and not of the court, to pass on the facts and weigh the testimony.

[1, 2] We recognize that "arbitrations are favored in law, and every reasonable intendment will be indulged in to support them." Hill v. Walker, 140 S. W. 1159. But a showing of fraud, mistake, bias, undue influence, or intimidation will avoid an award made by them. In this case the award was made by two of the arbitrators, Morin and Edminster. Morin was selected by the appellee. It is undisputed in the record that, the only time an attorney for the appellant appeared before them as such arbitrators, Morin refused to let him remain in the room, and requested that he withdraw. It is also undisputed that when the attorney for the appellee appeared before him (according to the testimony of appellants, uninvited) he refused to request the withdrawal of such attorney, but listened to him and followed his suggestions as to the law by which they were to be governed. This conduct on the part of Morin was sufficient to raise an issue of fact against his fairness as an arbitrator. Again, the testimony of appellants clearly shows improper conduct on the part of Halcomb and his attorney after the award had been reached, of such a nature as to raise an issue of intimidation on their part towards the board. When the award was finally made, instead of allowing the $960, as was agreed to by all three of them, they allowed only $150, and altogether refused Anderson's claim for damages based on the clause of the contract allowing $10 per day for delay.

The agreement of the arbitrators, adjusting the differences between the parties, according to appellants' testimony, was not only fair and equitable, but was also a lawful agreement, and one which the courts would have enforced. Halcomb and his attorney, in their protest before the board against the fairness of the award, failed to consider the fact that the award also included an adjustment of the damages growing out of delay in constructing the building. Notwithstanding by their presence Halcomb and his attorney had violated the agreement shown by appellants' testimony, if they had done nothing more than enter a formal protest to the award, or presented an argument on request of the board, we would not be inclined to hold that their conduct raised an issue of fact against the award. But Isaacks testified that they intruded themselves before the board; that they refused to go down when requested; that they precipitated a very bitter discussion, and challenged the award as being unfair, unjust, and inequitable, and one which the courts would not enforce. So violent was their protest that the meeting broke up in disorder. Two of the arbitrators refused to conclude the agreement, and in their final award rendered a decision vastly different from the one which had been honestly and fairly reached. The final award was to the prejudice of appellants in the sum of about $800. Edminster testified that they heard no new evidence between the second and third meetings. What, then, had entered into the case, causing this radical deduction in the sum to be allowed appellants? Appellants say it was fraud, bias, prejudice, and intimidation. In our judgment, the facts of this case raise this issue, and error was committed in instructing a verdict for appellees.

The judgment of the trial court is reversed, and the cause remanded.